FIFTH DIVISION
 September 27, 1996

No. 1-94-3261

THE PEOPLE OF THE STATE OF )
ILLINOIS, )
 ) Appeal from the Circuit
 Plaintiff-Appellee, ) Court of Cook County.
 )
 v. ) 
 )
JEROME D. SCHRAM, ) Honorable
 ) Themis Karnezis,
 ) Judge Presiding.
 Defendant-Appellant. )

 JUSTICE GORDON delivered the opinion of the court:
 The defendant, Jerome Schram, was indicted in February 1994
with six counts of forgery. The indictments alleged that with
the intent to defraud, the defendant made, altered and delivered
motor fuel distributor licenses, gasoline tax ordinance
certificates of registration, new account applications, business
applications and tax exemption authorizations in violation of 720
ILCS 5/17-3(A)(1) (West 1994). Schram filed a motion to dismiss
the charges, claiming that his prosecution for forgery was
precluded because it would constitute double jeopardy under 720
ILCS 5/3-4 (West 1994) in light of an earlier indictment; that
the forgery action should have been brought at the time of that
earlier indictment based on the compulsory joinder statute (720
ILCS 5/3-3(b) (West 1994)); that the indictment was insufficient
to state the offense of forgery; and that his due process rights
had been violated based on alleged prosecutorial misconduct
before the grand jury and on an alleged two-year delay in seeking
this indictment. The trial court denied Schram's motion to
dismiss, and Schram appeals from that order pursuant to Illinois
Supreme Court Rule 604(f) (145 Ill. 2d R. 604(f)).
 The facts are undisputed. On May 11, 1992, the State sought
a grand jury indictment against Schram for alleged violations of
the Illinois Motor Fuel Tax Act (Ill. Rev. Stat. 1992, ch. 120,
par. 431 et seq. now at 35 ILCS 505 et seq. (West 1994))
(hereinafter referred to as the "IMFTA"), which provides criminal
penalties for the nonpayment of taxes in various transactions
involving the purchase and sale of motor fuel and for the sale or
distribution of motor fuel without a license. Pursuant to that
statute, indictments were returned against Schram which alleged
that between September and December of 1991, in violation of the
IMFTA, Schram failed to file motor fuel tax returns, failed to
remit motor fuel tax payments, and distributed motor fuel without
a license. The trial court granted Schram's motion to dismiss
those indictments, stating that they failed to allege illegal
conduct with sufficient specificity, that they were "drafted in a
somewhat sloppy fashion," and that they "would not give [the
defendant] an opportunity to defend or to be freed from double
jeopardy." The trial court indicated that these insufficiencies
could be "cleaned-up" and that the defendant could be re-indicted
under the IMFTA. The State chose not to appeal the order of
dismissal and did not attempt to correct the deficiencies in
order to re-indict Schram under the IMFTA.
 On February 22, 1994, the State appeared before another
grand jury seeking to indict Schram for forgery in violation of
720 ILCS 5/17-3(A)(1) (West 1994), which provides that a person
commits forgery when "with the intent to defraud, he knowingly
*** [m]akes or alters any document apparently capable of
defrauding another." Testimony before the grand jury alleged
that Schram tendered forged documents to Tropicana Energy Company
and to Martin Oil Company purporting to show Schram's official
authorization to purchase several tanker loads of gasoline and
that Schram presented those documents in order to avoid the
payment of motor fuel transaction taxes. In particular, the
State alleged that Schram made, altered and delivered forged
documents including a federal registration for gasoline tax with
an identification number which had never been issued to Schram;
an Illinois Motor Fuel Distributor's license which was never
issued by the Illinois Department of Revenue and which was signed
by a director of the Department of Revenue who was not employed
by that department when that license was purportedly issued; a
Cook County Gasoline Tax Ordinance Certificate of Registration
never issued by Cook County to Schram; a business application and
tax exemption authorization bearing a State of Illinois Motor
Fuel Number never issued by the State to Schram; and state and
county tax numbers never issued by those entities to Schram. The
grand jury testimony regarding the alleged forgeries also
revealed that prior to the IMFTA indictments, the Illinois
Department of Revenue agents investigating Schram knew of the
transactions and documents which formed the basis for the instant
forgery indictments.
 In his motion to dismiss the forgery indictments, Schram
urged the following five contentions of error: (1) that his
prosecution for forgery was barred under double jeopardy
principles pursuant to 720 ILCS 5/3-4 (West 1994) in light of the
May 1992 indictment under the IMFTA; (2) that his prosecution was
barred by section 3-3(b) of the Criminal Code of 1961, the
compulsory joinder statute (720 ILCS 5/3-3(b) (West 1994)), which
he alleged required that the current forgery indictments be
prosecuted with the May 1992 IMFTA indictments in a single
action; (3) that the current indictment was insufficient to state
the offense of forgery; (4) that his due process rights were
violated by prejudicial prosecutorial statements before the grand
jury regarding the May 1992 indictment; and (5) that his due
process rights were violated by the State's two-year delay since
the May 1992 indictment in prosecuting the current allegations.
 The trial court denied defendant's motion to dismiss the
forgery indictments. With respect to Schram's double jeopardy
claim, the court stated that because the May 1992 indictment was
terminated by a dismissal, it was not a "conviction or an
acquittal" under the former jeopardy statute and therefore could
not serve as the basis of a double jeopardy defense in the
instant action. With respect to Schram's compulsory joinder
claim, the trial court stated that the IMFTA indictment was based
on different acts and required different proofs than does the
forgery indictment, that "the court does not *** view the
dismissal [of the May 1992 indictment] as a prosecution" under
the compulsory joinder statute, and that therefore Schram's
compulsory joinder claim must fail. With respect to Schram's
contention that the current indictments were insufficient to
state the offense of forgery, the trial court stated that the
indictment was sufficient to advise the defendant of the charges
against him. Finally, with respect to Schram's due process
arguments, the trial court stated that Schram failed to show that
the two-year delay in obtaining the forgery indictments
prejudiced him.
 On appeal, Schram advances the same five arguments that he
presented to the trial court in his motion to dismiss, and
contends that on each of those five bases the court erred in
denying his motion. In his jurisdictional statement, the
defendant purports to predicate the jurisdiction of this court
upon Illinois Supreme Court Rule 604(f) (145 Ill. 2d R. 604(f)),
which the state purports to concede in its jurisdictional
statement. Rule 604(f) provides that a criminal defendant "may
appeal to the Appellate Court the denial of a motion to dismiss a
criminal proceeding on grounds of former jeopardy" (emphasis
added). Although the State does not contest appellate
jurisdiction, jurisdiction cannot be waived or stipulated to by
the parties. (Provident Life & Accident Ins. Co. v. Smith, 266
Ill. App. 3d 705, 639 N.E.2d 627 (1994)), and this court has a
duty to examine matters pertaining to its jurisdiction sua
sponte. Almgren v. Rush Presbyterian-St. Luke's Medical Center,
162 Ill. 2d 205, 642 N.E.2d 1264 (1994); Ferguson v. Riverside
Medical Center, 111 Ill. 2d 436, 490 N.E.2d 1252 (1985). 
Therefore, we must determine whether jurisdiction under Rule
604(f) will properly vest jurisdiction in this court with respect
to each of the five contentions on appeal, as opposed to vesting
jurisdiction solely with respect to those contentions pertaining
to former jeopardy.
 Appellate courts lack jurisdiction to review nonfinal
judgments, orders and decrees absent statutory exceptions. 
Village of Niles v. Szczesny, 13 Ill. 2d 45, 147 N.E.2d 371
(1958); People v. Culhane, 34 Ill. App. 3d 158, 340 N.E.2d 63
(1975). Ordinarily, a trial court's order denying a defendant's
motion to dismiss criminal charges is a nonfinal and therefore a
nonappealable order, except to the extent specifically provided
under applicable statutory exceptions. People v. Miller, 35 Ill.
2d 62, 219 N.E.2d 475 (1966); People v. Culhane. Supreme Court
Rule 604 contains such statutory exceptions, and the only part of
that rule applicable in the instant case is Rule 604(f), which
permits a defendant to appeal from the denial of a motion to
dismiss a criminal proceeding where that motion was based on
former jeopardy principles. See, e.g., People v. Thomann, 197
Ill. App. 3d 516, 554 N.E.2d 755 (1990); People v. Hogan, 186
Ill. App. 3d 267, 542 N.E.2d 178 (1989).
 However, the scope of review of an order in a 604(f) appeal
is limited to a former jeopardy analysis, and does not extend to
a review of alleged errors which could not independently form the
basis for appellate jurisdiction under 604(f). People v. Stefan,
208 Ill. App. 3d 205, 567 N.E.2d 18 (1991), rev'd on other
grounds, 146 Ill. 2d 324, 586 N.E.2d 1239 (1992). In Stefan, the
defendant appealed from an order denying his motion to dismiss an
indictment pursuant to Rule 604(f). The defendant urged that the
trial court erred in denying his motion because the indictment
was barred on double jeopardy grounds, and because it did not
plead the offenses charged with sufficient specificity. The
Stefan court held that Rule 604 did not confer appellate
jurisdiction over the defendant's allegation of error regarding
the vagueness of the indictment, but, rather, that it confined
review on appeal to defendant's double jeopardy contentions. The
court in Stefan stated:
 "Regarding the second contention, we note that Supreme
 Court Rule 604 [citation] does not permit interlocutory
 appeals from an order denying the motion to dismiss on
 grounds of vagueness or an order overruling a
 defendant's objections to an amended bill of
 particulars. Thus, the second argument is improperly
 before us and will not be addressed on appeal." 208
 Ill. App. 3d at 206-07, 567 N.E.2d at 19.
 We note that while Stefan was reversed on its substantive
holding which affirmed the trial court's denial of the
defendant's motion to dismiss on double jeopardy grounds, its
restriction of the issues to be considered on appeal pursuant to
Supreme Court Rule 604(f) remained unchallenged. See by analogy
People v. Kerr-McGee Chemical Corp., 142 Ill. App. 3d 1104, 492
N.E.2d 1003 (1986) (scope of review in interlocutory appeal
brought under Illinois Supreme Court Rule 307 concerning the
denial of a request for an injunction does not encompass
allegations of error not narrowly bearing on that denial). 
Accord Caudle v. Sears, Roebuck & Co., 245 Ill. App. 3d 959, 614
N.E.2d 1312 (1993) (controverted facts or the merits of the case
are not decided on an interlocutory appeal brought pursuant to
Rule 307); Lindsey v. Board of Education, 127 Ill. App. 3d 413,
468 N.E.2d 1019 (1984) (appeals permitted by Rule 307 do not open
the door to a general review of other issues in the underlying
case). Thus, as in the foregoing cases, we lack jurisdiction to
review Schram's contentions regarding due process or failure to
state the offense of forgery, and must confine our review solely
to those contentions concerning former jeopardy.
 We now address Schram's contention that the trial court
erred in its failure to dismiss the present forgery indictments
on double jeopardy grounds as set forth in 720 ILCS 5/3-4(b)
(West 1994) in light of the earlier May 1992 IMFTA indictments. 
That contention is without merit. Section 3-4(b) of the Criminal
Code provides in relevant part as follows:
 "Effect of former prosecution *** (b) A prosecution is
 barred if the defendant was formerly prosecuted for a
 different offense, or for the same offense based upon
 different facts, if such former prosecution: (1)
 Resulted in either a conviction or an acquittal, and
 the subsequent prosecution is for an offense of which
 the defendant could have been convicted on the former
 prosecution; or was for an offense with which the
 defendant should have been charged on the former
 prosecution, as provided in Section 3-3 of the Code
 ***." 720 ILCS 5/3-4(b) (West 1994) (emphasis added).
 The defendant contends that the dismissal of the IMFTA
indictments against him constituted an "acquittal" under section
3-4(b), and that therefore, the forgery indictments against him
must be dismissed on double jeopardy grounds. Schram has
mischaracterized the dismissal of the IMFTA indictments as an
"acquittal" under 3-4(b). Ordinarily, in order for double
jeopardy to attach, 
 "'there must be a valid indictment ***. So, where the
 indictment or information is so defective in form or
 substance that it will not support a conviction, it
 cannot form the basis of proceedings which will put the
 accused in jeopardy and bar another prosecution.'" 
 People v. King, 21 Ill. App. 3d 256, 314 N.E.2d 694
 (1974) (quoting 22 C.J.S. Criminal Law  246 (1961)).
A court's dismissal of charges against a defendant due to the
technical insufficiency of the indictment is not tantamount to an
acquittal for purposes of double jeopardy. People v. Baze, 43
Ill. 2d 298, 253 N.E.2d 392 (1969); People v. King (a defendant
cannot succeed on a double jeopardy claim where the indictment is
so defective in form or substance that it will not support a
conviction). See 720 ILCS 5/2-1 (West 1994) ("acquittal" defined
as "a verdict or finding of not guilty of an offense, rendered by
a legally constituted jury or by a court of competent
jurisdiction").
 In the instant case, the dismissal of the IMFTA indictments
did not constitute an acquittal because that dismissal was based
upon the technical insufficiency of the indictments. As noted,
the trial court dismissed the IMFTA indictments because the
charges were enumerated in a "sloppy" and unspecific fashion,
stating that the charges should be "cleaned up" before re-
indictment. Hence, those charges were dismissed because they did
not technically suffice to state an offense against Schram under
the IMFTA. Because those indictments were dismissed due to
technical insufficiencies, they do not constitute an "acquittal"
under section 3-4(b). People v. Baze; People v. King.
 We also reject Schram's contention that since the State
chose not to appeal or to re-indict the defendant for violations
of the IMFTA following that dismissal, the State must have
therefore viewed the dismissal as an "acquittal" under section 3-
4(b). We first note that we cannot speculate as to the State's
subjective motive for electing not to appeal or to re-indict the
defendant on the IMFTA charges. Moreover, the viewpoint of the
prosecution is immaterial to the determination of whether an
acquittal existed for purposes of a double jeopardy bar, as that
determination is made on the basis of the nature of the
indictment and its ultimate disposition. See generally People v.
Baze; People v. King.
 In support of his contention that the dismissal of the IMFTA
indictments constituted an "acquittal," the defendant refers to
the holding in the case of People v. Hiatt, 229 Ill. App. 3d
1094, 595 N.E.2d 733 (1992). In Hiatt, the police recovered
pornographic videotapes and photographs of a minor from the
defendant's home. The defendant was charged with child
pornography for his alleged pornographic videotaping of a minor. 
Following a jury trial, he was acquitted of those charges. The
defendant was then re-indicted for child pornography for
possession of one of the videotapes recovered during the police
search of his home. That indictment was dismissed on double
jeopardy grounds. The defendant was again re-indicted for child
pornography based upon his possession of the photographs
recovered in the same police search. The defendant filed a
motion to dismiss that indictment, contending that it was barred
on double jeopardy and compulsory joinder grounds because the
dismissal of the previous indictment constituted an acquittal
under section 3-4(b) and because the State knew of the
photographs at the time of the previous indictment. The trial
court granted the defendant's motion to dismiss the third
indictment concerning the photographs. In agreeing that the
prior dismissal constituted an acquittal under section 3-4(b),
the Hiatt court stated that
 "an acquittal may occur even though the question of
 guilt or innocence has never been submitted to the
 trier of fact such as when a defendant is discharged on
 speedy trial grounds." Hiatt, 229 Ill. App. 3d at
 1098, 595 N.E.2d at 736.
 Defendant's reliance upon the decision in Hiatt is
unwarranted. In Hiatt, the dismissal of the second indictment
regarding the videotape on double jeopardy grounds was
substantive, on the merits, and would preclude any possibility of
a cure. Moreover, the dismissal of the third indictment against
the defendant regarding possession of the photographs was
effectively based on double jeopardy principles emanating from
the defendant's original acquittal by the jury of the same
offense. Here, the dismissal of the IMFTA indictments was based
on technical procedural grounds, and did not purport to be a
substantive disposition on the merits. The dismissal in this
case did not purport to preclude reindictment if those procedural
infirmities were cured. Therefore, under the reasoning of the
courts in People v. Baze and People v. King, as set forth above,
that dismissal does not constitute an acquittal under section 3-
4(b).
 In addition to the fact that the defendant's double jeopardy
defense must fail because there was no previous acquittal, it
must also fail because none of the other elements required under
the provisions of section 3-4(b) are met as well. As noted,
section 3-4(b) provides that a subsequent prosecution will be
barred if that prosecution is "for an offense of which the
defendant could have been convicted on the former prosecution" or
is "for an offense with which the defendant should have been
charged on the former prosecution, as provided in Section 3-3 of
this Code." With respect to whether the defendant could have
been convicted of the subsequent charges in the former
prosecution, the court in People v. Mueller, in clarifying the
meaning of that requirement in section 3-4(b), stated that this
issue is resolved by determining whether the subsequent charges
are a lesser included offense of the former charges. In the
instant case, none of the parties have urged that forgery is a
lesser included offense of an offense under the IMFTA, nor would
there have been any merit to such a contention had one been made. 
The rule is clear that a lesser included offense for purposes of
double jeopardy is one in which the lesser offense is a necessary
element of the greater offense. People v. Mueller. See also
United States v. Dixon, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed.
2d 556 (1993); Illinois v. Vitale, 447 U.S. 410, 65 L. Ed. 2d
228, 100 S. Ct. 2260 (1980); Blockburger v. United States, 284
U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932) (determination of
whether later prosecution barred on double jeopardy grounds
focuses on the statutory elements of the offenses charged and on
whether each provision requires proof of a fact which the other
does not). It is manifest on its face and requires no extended
discussion to note that the proofs required to establish a
violation of the IMFTA for the nonpayment of motor fuel taxes and
for the failure to obtain a license to distribute motor fuel are
wholly different and apart from the proofs required under the
forgery statute to show the alteration and delivery of a document
capable of defrauding another and the intent to defraud.
 Likewise, the second indictment in this case is not subject
to the compulsory joinder provisions of section 3-4(b) which
would have required that this action be joined with the earlier
IMFTA indictments which were dismissed. Schram contends that the
trial court misinterpreted and misapplied section 3-3 of the
compulsory joinder statute. We disagree. Section 3-3 provides
as follows:
 "Multiple Prosecutions for Same Act. (a) When the same
 conduct of a defendant may establish the commission of
 more than one offense, the defendant may be prosecuted
 for each such offense. (b) If the several offenses are
 known to the proper prosecuting officer at the time of
 commencing the prosecution and are within the
 jurisdiction of a single court, they must be prosecuted
 in a single prosecution *** if they are based on the
 same act." 720 ILCS 5/3-3(b) (West 1994) (Emphasis
 added).
Pursuant to this language, defendant would urge that the IMFTA
and forgery indictments are so interrelated that they are "based
on the same act" under section 3-3(b), and additionally, that
because the prosecution had knowledge of the acts which formed
the basis of the forgery charges prior to the IMFTA indictments,
the forgery indictments should have been dismissed because the
State failed to prosecute all charges in a single action.
 The case of People v. Mueller, 109 Ill. 2d 378, 488 N.E.2d
523 (1986) is in point. In that case, the defendant killed two
individuals, hid their bodies and later deposited them in a
river. The defendant was charged with murder, pleaded self-
defense, and was acquitted. The State later charged him with
homicidal concealment and after he was convicted, he appealed on
compulsory joinder and former jeopardy grounds. Although the
prosecution had full knowledge of both offenses prior to the
prosecution of either one, the Mueller court affirmed. In
holding that the murder and concealment charges were not "based
on the same act" under section 3-3, that court stated
 "The fact that the shootings and the acts of
 concealment were related is irrelevant. There is no
 requirement of joinder where multiple offenses arise
 from a series of related acts. [Citations.] 'Section
 3-3 is not intended to cover the situation in which
 several offenses *** arise from a series of acts which
 are closely related with respect to the offender's
 single purpose or plan.' [Citation.] Indeed, the
 drafters considered and rejected an earlier version of
 section 3-3(b) which would have required a single
 prosecution when multiple offenses arose from the same
 'conduct.' [Citation.] The term 'conduct' could, of
 course, refer to a series of acts. [Citation]. The
 purpose of this section as enacted was to preclude
 successive prosecutions where more than one person was
 injured by a single act of the accused, such as setting
 off an explosive. [Citation.]" Mueller, 109 Ill. 2d
 at 385-86, 488 N.E.2d at 526.
See also People v. Astorga, 245 Ill. App. 3d 124, 613 N.E.2d 779
(1993) (where drugs and electronic scale possibly used in cocaine
sales found during same search, section 3-3(b) did not bar
separate indictments for possession of illegal drugs and of
stolen scale because not same conduct); People v. Thomann, 197
Ill. App. 3d 516, 554 N.E.2d 755 (1990) (where defendant charged
with offense of possession and dissemination of videotaped child
pornography, and later with offense of possession of
advertisement containing child pornography, 3-3(b) did not
mandate that all child pornography charges be prosecuted in
single prosecution because the acts were separate and distinct).
 As in Mueller, Astorga, and Thomann, the IMFTA charges and
the forgery offenses here were not "based on the same act" under
section 3-3(b), but, rather, involved distinct offenses based
upon different conduct in which Schram engaged in order to
achieve his alleged overall goal of motor fuel tax evasion. The
IMFTA indictments accused Schram of failing to file motor fuel
tax returns, failing to pay motor fuel taxes and failing to
obtain a license before distributing motor fuel. By contrast,
the forgery indictments at issue on appeal charge the defendant
with making, altering and delivering several falsified licenses
and registrations. Whereas the IMFTA charges were based on
Schram's alleged failure to pay taxes, to file returns, or to
obtain a license for the distribution of motor fuel, the forgery
charges are based on his alleged active misrepresentation of his
authority to purchase motor fuel in order to effectuate his
overall plan to evade his obligation to pay motor fuel taxes. As
in Mueller, Astorga, and Thomann, the fact that the two sets of
charges pertain to a related subject, namely, the nonpayment of
gasoline taxes, is insufficient to require joinder under Illinois
law.
 The defendant's reliance on the cases of People v.
Mullenhoff, 33 Ill. 2d 445, 211 N.E.2d 744 (1965) and People v.
Mitsakopoulos, 171 Ill. App. 3d 198, 524 N.E.2d 1183 (1988) is
misplaced. In Mullenhoff, the defendant was charged and
acquitted of attempt to commit deviate sexual assault and was
subsequently charged and convicted of attempt to commit rape
based on the identical occurrence and conduct. The Mullenhoff
court concluded that the compulsory joinder statute under section
3-3(b) mandated joinder and therefore barred the subsequent
attempt rape prosecution because "both offenses were based on the
identical conduct of the defendant, and this conduct was known to
the prosecuting officer at the commencement of the prosecution." 
Mullenhoff, 33 Ill. 2d at 449, 211 N.E.2d at 746. In
Mitsakopoulos, the defendant was initially charged with forgery
of a check, and subsequently was charged with theft by exerting
unauthorized control over the proceeds of that same check. The
Mitsakopoulos court found that section 3-3(b) barred the separate
theft prosecution, because the evidence for both the theft and
forgery charges was the same, involved precisely the same
conduct, and because the prosecution knew of both offenses prior
to the prosecution of either charge.
 As already noted, unlike the circumstances before the courts
in Mullenhoff and Mitsakopoulos, here there was no single act
forming a common basis for the IMFTA and forgery charges. As
already noted, Schram's presentation of falsified documents
formed the basis for the forgery charges, whereas his failure to
pay taxes, to file returns and to obtain a fuel distribution
license formed the basis for the IMFTA charges. Moreover, unlike
Mitsakopoulos, the evidence required to prove forgery, i.e. the
forged documents, is not the same as that required to prove the
nonpayment of motor fuel taxes. Thus, Schram's alleged official
document forgeries stand independently from his alleged IMFTA
failures, thus rendering section 3-3(b) inapplicable as a bar to
the forgery indictments in the instant case.
 In addition to arguing the violation of the compulsory
joinder statute as a basis for its double jeopardy contentions,
the defendant also appears to argue the violation of the
compulsory joinder statute as a wholly independent ground. To
the extent that the defendant makes a compulsory joinder argument
on grounds independent of the double jeopardy statute, it would
more than likely be jurisdictionally barred under Supreme Court
Rule 604(f). As already discussed, Rule 604(f) provides that a
criminal defendant "may appeal to the Appellate Court the denial
of a motion to dismiss a criminal proceeding on grounds of former
jeopardy" (145 Ill. 2d R. 604(f)) (emphasis added). See People
v. Stefan. However, even if we were to independently entertain a
compulsory joinder argument under section 3-3(b), the same
factors discussed above which preclude compulsory joinder under
section 3-4(b) would also extend to preclude compulsory joinder
in an independent application of section 3-3(b).
 For the foregoing reasons, the judgment of the Circuit Court
of Cook County is affirmed.
 McNULTY, P.J., and COUSINS, Jr., J., concur.